**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) UNITED STATES OF AMERICA and | ) | |
| | ) | |
| (2) STATE OF OKLAHOMA, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. _____ |
| | ) | |
| v. | ) | |
| | ) | |
| (1) JUDY D. DENNIS, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT OF THE UNITED STATES OF AMERICA
AND THE STATE OF OKLAHOMA**

The United States of America and the State of Oklahoma jointly allege as follows:

**I.    INTRODUCTION**

1.    As more fully alleged below, this action arises from multiple schemes carried out by Defendant Judy Dennis, M.S., C.C.C./SLP ("Dennis"), to bill the United States and the State of Oklahoma for false and/or fraudulent claims for speech-language pathology ("SLP") services allegedly administered to beneficiaries of Medicare, Oklahoma Medicaid, and TRICARE, (collectively "Government Health Benefit Programs" or "GHBP").

2.    Dennis knowingly submitted or caused to be submitted false and/or fraudulent claims for payment to GHBP for SLP services that were not rendered and/or not medically necessary. These services did not comply with material requirements of GHBP laws, regulations, and program instructions, and were not reimbursable.

3.      Dennis knew, acted in deliberate ignorance, or acted in reckless disregard of GHBP requirements, including that all billed services be (1) performed as billed; and (2) medically reasonable and necessary for the treatment of an individual beneficiary. The claims submitted to GHBP by Dennis, or at Dennis' direction, were factually false because the services billed were not rendered. Dennis also submitted or caused to be submitted false claims by making materially false express and implied certifications to get such claims paid.

4.      As a result, Dennis generated a lucrative revenue stream and received more than $2.5 million in GHBP dollars to which she was not entitled.

5.      The United States brings this action against Dennis pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"), and federal common law to recover damages, as well as applicable civil penalties and treble damages.

6.      The State of Oklahoma brings this action against Dennis pursuant to the Oklahoma Medicaid False Claims Act, 63 Okla. Stat. § 5053.1 *et seq.* ("OFCA"), and state common law to recover damages, as well as applicable civil penalties and treble damages.

## II.     JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732 and 28 U.S.C. §§ 1331 and 1345.

8.      This Court has supplemental jurisdiction over all federal common law or equitable claims under 28 U.S.C. § 1367(a).

9.      This Court also has supplemental jurisdiction over all OFCA and state common law claims pursuant to 28 U.S.C. § 1367(a) because those causes of action are so closely related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. This federal court's jurisdiction over state law false claims is further authorized by the FCA itself, pursuant to 31 U.S.C. § 3732(b), as the federal and state claims arise from the same transactions and occurrences.

10.     This Court has personal jurisdiction over Dennis and venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c) because Dennis resides in this District, Dennis transacts business in this District, and Dennis' conduct that gave rise to this case occurred in this District.

## III.    PARTIES

11.     Plaintiff United States of America brings this action on behalf of the Department of Health and Human Services and the Department of War.

12.     Plaintiff State of Oklahoma brings this action on behalf of the Oklahoma Health Care Authority.

13.     The Department of Health and Human Services ("HHS") is an agency and instrumentality of the United States, and the Centers for Medicare and Medicaid Services ("CMS") is the component agency of HHS that administers and supervises the Health Insurance Program for the Aged and Disabled established by Title XVIII of the Social

Security Act, 42 U.S.C. §§ 1395 *et seq.* ("Medicare"). *See also* 42 C.F.R. Ch. IV, Subchapter B.

14.     The Department of War ("DoW") is an agency and instrumentality of the United States, and the Defense Health Agency ("DHA") is the component agency that administers and supervises the TRICARE Health Plan (formerly known as CHAMPUS) established and governed by 10 U.S.C. Chapter 55 and 32 C.F.R. Part 199 ("TRICARE").

15.     The Oklahoma Health Care Authority ("OHCA") is an agency and instrumentality of the State of Oklahoma. OHCA administers and determines financial eligibility for the Medicaid program in Oklahoma.

16.     Dennis is a resident of Oklahoma City, Oklahoma, and, at all times relevant to this case, was a licensed speech-language pathologist practicing in Oklahoma City, Oklahoma.

## IV.   LAW

### A. The Federal False Claims Act

17.     The FCA provides, in pertinent part, that a person who:

>  (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]
>
>  (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).  For purposes of the FCA,

> (1) the terms "knowing" and "knowingly"—

> (A) mean that a person, with respect to information—
> (i)    has actual knowledge of the information;
> (ii)    acts in deliberate ignorance of the truth or falsity of the information; or
> (iii)    acts in reckless disregard of the truth or falsity of the information; and

> (B) require no proof of specific intent to defraud[.]

31 U.S.C. § 3729(b)(1).

### B.  The Oklahoma Medicaid False Claims Act

18.    The OFCA provides, in pertinent part, that a person who:

> (1) Knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

> (2) Knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .

> is liable to the State of Oklahoma for a civil penalty consistent with the civil penalties provision of the Federal False Claims Act, 31 U.S.C. 3729(a), as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 101-410), and as further amended by the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015 (Sec. 701 of Public Law 114-74), plus three times the amount of damages which the state sustains because of the act of that person.

63 O.S. § 5053.1(B).  The definitions of "knowing" and "knowingly" under the OFCA are materially the same as the definitions of the terms under the FCA.

### C. The Relevant Government Health Benefit Programs

#### i.    The Medicare Program

19.    In 1965, Congress enacted Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, known as the Medicare program. Medicare is a federal health insurance program that provides coverage for individuals based on age, disability, or affliction with end-stage renal disease. 42 U.S.C. §§ 426, 426-1. Medicare is funded by premium payments by enrollees together with contributions from funds appropriated by the Federal Government.

20.    Medicare consists of four distinct parts, only one of which is relevant here. Dennis submitted or caused to be submitted claims under Medicare Part B, which covers certain medical services, including SLP services. 42 U.S.C. § 1395k(a)(2)(B).

21.    CMS administers the Medicare program. CMS contracts with private contractors, referred to as Medicare Administrative Contractors ("MACs"), to act as agents in reviewing and paying claims submitted by healthcare providers. 42 U.S.C. § 1395u; 42 C.F.R. Part 421. At all times relevant to this Complaint, Novitas Solutions, Inc., ("Novitas") was the MAC for the SLP services billed to Medicare by Dennis.

22.    To participate in the Medicare program as a new enrollee, providers must submit the appropriate version of the Medicare Enrollment Application, CMS Form-855. Enrolled providers must complete a new Form CMS-855 to change their enrollment

information or to reactivate, revalidate, and/or terminate Medicare enrollment.

23.    Medicare requires providers and suppliers to certify that they meet, and will continue to meet, the requirements of the Medicare laws and regulations, and to attest that they are aware of and will abide by applicable program instructions. 42 C.F.R. §§ 424.516(a)(1), 424.510(d)(3).

24.    To enroll as an individual Medicare provider, Dennis was required to sign a Certification Statement that is part of the Medicare Enrollment Application for Physicians and Non-Physician Practitioners, CMS Form-855I.

25.    As part of a revalidation project, Dennis completed Form-855I and signed the Certification Statement on June 15, 2016. By her signature, Dennis agreed:

    a. to abide by the applicable Medicare laws, regulations, and program instructions;

    b. the Medicare laws, regulations, and program instructions are available through the Medicare Administrative Contractor; and

    c. payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with Medicare laws, regulations, and program instructions…and on the supplier's compliance with all applicable conditions of participation in Medicare.

26.    Thereafter, Dennis supplemented her Form 855I and signed a second Certification Statement on August 22, 2016.

27.    To obtain Medicare reimbursement for administered medical services, including SLP services, providers submit a claim form known as the CMS 1500 form or its electronic equivalent known as the 837P format.

28.     To submit electronic claims via the 837P format, a provider must complete and submit to the MAC an Electronic Data Interchange Enrollment Form ("EDI"). On the EDI, the provider agrees to "submit claims that are accurate, complete, and truthful" and certifies that the use of the provider's National Provider Identifier ("NPI") on a claim "constitutes the provider's legal electronic signature and constitutes an assurance by the provider that services were performed as billed." The provider also agrees to "retain all original source documentation and medical records pertaining to any such particular Medicare claim for a period of at least 6 years, 3 months after the bill is paid." The provider's EDI certification then serves as the signature for every electronic claim submitted by the provider thereafter.

29.     The EDI enrollment Dennis submitted to Novitas is signed by Dennis and dated February 21, 2017.

30.     Among the information the provider includes on a CMS 1500 or the 837P electronic claim are Current Procedural Terminology Codes ("CPT codes"), CMS Healthcare Common Procedure Coding System ("HCPCS") codes, and/or modifiers to such codes. These codes are the provider's express identification of the services rendered and certification that such services are reimbursable.

31.     Providing accurate CPT and HCPCS codes in claims is material to and a condition of payment for GHBP. *See*, *e.g.*, Medicare Learning Network Fact Sheet, Medicare Billing: 837P and Form CMS-1500.

32.     The provider also must include on the CMS 1500 form or 837P format an NPI, which is a unique 10-digit identification number corresponding to a specific healthcare provider. Claims for speech/language services must include the NPIs for the "rendering" and "billing" providers. Medicare Claims Processing Manual, Ch. 26, § 10.4.

33.     The claims submitted to CMS at issue in this action identified Dennis (NPI 1669476180) as both the rendering and the billing provider.

34.     When submitting the CMS 1500 to Medicare for payment, providers such as Dennis also certify that:

   a. the claim is true, accurate, and complete;

   b. the provider familiarized themselves with all applicable laws, regulations, and program instructions, which are available from the Medicare contractor;

   c. the claim complies with all applicable Medicare laws, regulations, and program instructions for payment; and

   d. the services on the claim form were medically necessary.

35.     The claims at issue here were submitted for payment by or at the direction of Dennis to Novitas, the MAC responsible for processing such claims in the State of Oklahoma.

36.     Generally, after a provider submits the CMS-1500 or 837P claim to Novitas, the claim is paid directly to the provider without any review of supporting documents, including medical records.

37.     During the time relevant to this Complaint, Dennis submitted or caused to be submitted claims for payment for SLP services to Medicare via Novitas.

9

ii.   SoonerCare / The Oklahoma Medicaid Program

38.     SoonerCare, the Oklahoma Medicaid program, is a joint federal-state program that provides health care benefits for certain groups, including the poor and disabled. 42 U.S.C. §§ 1396 *et seq*. The Medicaid program was created in 1965 in Title XIX of the Social Security Act.

39.     Under the Social Security Act, Medicaid funding is shared between the state and federal governments. The federal portion of each state's Medicaid payments, known as the Federal Medical Assistance Percentage ("FMAP"), is based on a state's per capita income compared to the national average. 42 U.S.C. § 1396d-(b). Thus, each claim submitted for payment to the Oklahoma Medicaid program is paid with state and federal dollars according to the FMAP.

40.     Each state Medicaid program is required to implement a "State plan" containing certain specified minimum criteria for coverage and payment of claims in order to qualify for federal funds for Medicaid expenditures. 42 U.S.C. § 1396a.

41.     Oklahoma, through statutes, administrative rules, and provider agreements, requires Medicaid providers to certify compliance with federal and state law.

42.     A provider's participation in the Oklahoma Medicaid program is voluntary.

43.     To be eligible for payment by the Oklahoma Medicaid program, providers must have an approved Provider Agreement on file with OHCA. OKLA. ADMIN. CODE § 317:30-3-2. In each Provider Agreement, "the provider certifies all information submitted on claims is accurate and complete, assures that the State Agency's requirements are met

and assures compliance with all applicable Federal and State regulations." *Id.* "These agreements are renewed at least every 5 years with each provider." *Id.*

44.     Dennis originally enrolled with Oklahoma Medicaid as a provider in or around 1993.

45.     Relevant to this case, Dennis entered into a SoonerCare General Provider Agreement in 2019. That Agreement expired on March 31, 2022.

46.     Dennis again entered into a SoonerCare General Provider Agreement on or about April 1, 2022. That Agreement expired on March 31, 2026.

47.     As with Medicare, approved providers submit claims to OHCA for Medicaid reimbursement for administered medical services, including SLP services, through submission of an 837P or CMS 1500 claim in the Medicaid provider portal.

48.     Claims accepted into the Medicaid provider portal are issued a unique tracking number known as the Internal Control Number ("ICN") or the claim ID number.

49.     Claims submitted to Medicaid must identify the provider and describe the services rendered by reference to the CPT or HCPCS code applicable to the specific service provided.  Providers are reimbursed based on a fee schedule of allowable rates that correspond to the applicable CPT or HCPCS code.

50.     Providers certify with each claim for payment that the services or products for which payment is billed by or on behalf of the provider were medically necessary as defined by O.A.C. § 317:30-3-1(f) and were rendered by the provider. Providing accurate CPT and HCPCS codes in claims is material to and a condition of payment by OHCA.

51. If a provider contracts with a third party to provide billing services or submit claims on behalf of the provider, the provider is "responsible for the accuracy and integrity of all claims submitted on behalf of [the] Provider by the billing service." *See* Medicaid's General Provider Agreement.

52. During the time relevant to this Complaint, Dennis submitted or caused to be submitted claims for payment for SLP services to Medicaid via OHCA.

### iii. Oklahoma Human Services Home and Community-Based Services Waiver Program

53. Section 1915(c) of the Social Security Act authorizes the Secretary of Health and Human Services to waive certain specific Medicaid statutory requirements so that a state may voluntarily offer Home and Community-Based Services ("HCBS") to state-specified target group(s) of Medicaid beneficiaries who need a level of institutional care that is provided under the Medicaid state plan. The Medicaid HCBS waiver program permits a state to furnish an array of home and community-based services that assist Medicaid beneficiaries to live in the community and avoid institutionalization.

54. Oklahoma's Home and Community-Based Waiver for people with intellectual disabilities, now known as the Community Waiver, includes a comprehensive array of services including residential, employment and habilitation services and supports.

55. The Oklahoma Community Waiver program is operated by the Oklahoma Department of Humans Services, Developmental Disabilities Services ("DDS").

56. The Oklahoma Community Waiver is a funding mechanism which allows the state to offer community-based services as an alternative to institutional services. The

term waiver specifically refers to two elements of home and community-based services:

   a. First, the state applies to CMS for a special waiver or a special allowance from the services typically included in the State Medicaid Plan. This waiver allows the state to use Medicaid funds to provide alternative community supports for a targeted population who is at risk for institutionalization.

   b. Second, the individuals served waive the institutional services for which they are eligible in order to receive community-based supports.

57.    An individual's Oklahoma Community Waiver team assesses the needs of the individual and develops an annual plan of care to address those needs. The team consists of the individual, his or her legal guardian or advocate and the DDS case manager. Depending upon the service needs of the individual, the team may include residential and employment staff and professional staff such as a nurse, speech pathologist, psychologist, and physical therapist. The DDS case manager is responsible for providing support and monitoring the implementation of the plan. OKLA. ADMIN. CODE §§ 340:100-5-50 to 340:100-5-52.

58.    All Oklahoma Community Waiver providers must have an active contract agreement with OHCA in order for reimbursement to be made.

59.    The individual's Oklahoma Community Waiver team develops an Individual Plan, which "is a written document that describes the services necessary for the health and welfare, the outcomes desired by the service recipient and the services and supports necessary to achieve those outcomes." *Id.* at § 340:100-5-53(a). That Individual Plan is updated as needed by "ongoing assessment of progress and needs." *Id.* at § 340:100-5-53(b).

13

60.    The DDS case manager develops a Plan of Care that is consistent with the Individual Plan to authorize payment for services. *Id.* at § 340:100-5-53(e).

61.    All initial plans of care are submitted to OHCA Level of Care Evaluation Unit for review and confirmation of a diagnosis of intellectual disability, that the ID diagnosis was made before the member's 22nd birthday, and that the proposed delivery of services is consistent with the member's level of care need. Once this process has been completed the initial eligibility determination is approved by OHCA. All waiver plans of care are subject to review and approval by both DHS/DDS and the Waiver Administration and Development department of OHCA. OHCA does not review and approve all plans of care prior to implementation; however, all are subject to OHCA's approval.

62.    All claims for payment for Oklahoma Community Waiver services are submitted by providers directly to and are processed by the Oklahoma Medicaid Management Information System ("MMIS"), are subject to Oklahoma Medicaid guidelines, and are subject to all validation procedures included in the MMIS. All claims for payment for waiver services must be matched to an active prior authorization. Prior authorizations are created from the waiver member's individual plan of care.

63.    Payments for all waiver services are made through the Oklahoma MMIS.

64.    OHCA is responsible for Surveillance and Utilization Review of Oklahoma Community Waiver services. OHCA Provider Audits Unit also conducts ongoing monitoring of services to ensure Medicaid guidelines are followed.

65.    State share funding for services provided under Oklahoma's Community

14

Waiver program is from General Fund Appropriations from the State Legislature made to two State Agencies. The DHS is responsible for providing State share funding for all Waiver services except prescription drugs in excess of State Plan coverage limits and receives Legislative Appropriations to cover the same. OHCA is responsible for providing State share funding for prescription drugs covered under the various Waivers and receives Legislative Appropriations to cover the same. OHCA submits a billing report to the DHS for the State share dollars for all Waiver services (except prescription drugs) for which service provider claims were processed/paid. Through an inter-Agency transfer, these State share funds are then deposited into OHCA's general fund.

### iv.    The TRICARE Program

66.    TRICARE is a government-funded healthcare program for uniformed services members, retirees, and their families around the world. TRICARE is managed by DHA in two state-side regions. Dennis' conduct and submission of false claims all occurred within TRICARE's East Region wherein Humana Military is the assigned regional contractor assisting DHA.  Wisconsin Physicians Service ("WPS") is Humana Military's claims processing contractor in the TRICARE East Region.

67.    DHA provides Humana Military with guidance (as issued by DoW) for administering TRICARE-related laws. DoW issues this direction through modifications to the Code of Federal Regulations and TRICARE manuals.

68.    TRICARE presumes "the provider of the services is responsible for the actions of all individuals who file a claim on behalf of the provider." 32 C.F.R. § 199.2.

15

69.    To be eligible for reimbursement by TRICARE, medical services must be medically necessary and required in the diagnosis and treatment of illness or injury. *See, e.g.*, 32 C.F.R. §§ 199.2, 199.4(a)(1)(i), & 199.9(b)(3).

70.    Providing accurate CPT and HCPCS codes in claims is material to and a condition of payment by TRICARE via WPS.

71.    TRICARE defines "abuse" as practices that are "inconsistent with accepted sound fiscal, business, or professional practice which result in a [TRICARE] claim, unnecessary cost, or [TRICARE] payment for services or supplies that are…[n]ot within the concepts of medically necessary and appropriate care." 32 C.F.R. § 199.2. Abuse is "a sufficient basis for denying all or any part" of a TRICARE health claim. 32 C.F.R. § 199.9(b) One specific example of "abuse" is "[a] pattern of claims for services which are not medically necessary or, if medically necessary, not to the extent rendered. For example, a battery of diagnostic tests are given when, based on the diagnosis, fewer tests were needed." 32 C.F.R. § 199.9(b)(3).

72.    TRICARE also considers "flagrant and persistent overutilization of services without proper regard for results, the patient's ailments, condition, medical needs, or the physician's orders" to be fraud. 32 C.F.R. § 199.9(c)(5).

73.    For beneficiaries eligible for both Medicare and TRICARE, Medicare is the primary payer and TRICARE coverage is secondary. When such beneficiaries receive medical care, "the first determination will be whether payment may be made under Medicare." 32 C.F.R. § 199.8(d)(1)(iii). That determination is made according to Medicare

"exclusions, conditions, and limitations." *Id.*

74. Depending on their network status, non-institutional providers may submit paper claims to TRICARE using the CMS 1500 claim form (discussed above). When submitting an electronic claim form to TRICARE, the provider makes the same certifications as on the CMS 1500 claim form.

75. Humana Military includes the following as examples of fraud and abuse:

   a. Services that are "not within the concepts of medically necessary and appropriate care;"

   b. Services that fail "to meet professionally recognized standards for healthcare providers;"

   c. "Charging more than once for the same service (double billing);"

   d. "Charging for services never performed;" and

   e. "Performing inappropriate or unnecessary services."

Fraud and Abuse *available at* https://www.humanamilitary.com/about/fraudandabuse

(last accessed June 15, 2026).

76. Dennis entered into a Specialist Agreement with Humana Military Healthcare Services ("HMHS") in December 2003. In that agreement, Dennis agreed to:

   a. Provide services "in accordance with the prevailing practices and standards of the profession, HMMS standards, and TRICARE rules and regulations";

   b. "[P]repare and maintain medical records on all Beneficiaries receiving medical services in a form and for time periods required by all applicable state and federal laws, and licensing, and certification and reimbursement entities"; and

c. "[A]bide by all TRICARE program and HMHS rules and guidelines for coding that are applicable (including inclusive procedure codes) to the services provided hereunder."

77. Dennis also certified in the 2003 Specialist Agreement her understanding that "HMHS shall make no payment(s) to Physician for Covered Services rendered to Beneficiaries which are, determined by HMHS not to be medically necessary."

78. During the time relevant to this Complaint, Dennis submitted or caused to be submitted claims for payment for SLP services to TRICARE via WPS.

v. <u>The Government Health Benefit Programs Rely on Providers to be Truthful, Accurate, and Complete</u>

79. Because it is not feasible for GHBP personnel to review every patient's medical record for the millions of claims for payment they receive from providers, the programs rely on providers to comply with program requirements and submit truthful, accurate, and complete certifications and claims.

80. Generally, after a provider submits the claim to GHBP, the claim is paid without any review of supporting documents, including medical records.

V.    **REQUIREMENTS FOR PAYMENT FOR SPEECH/LANGUAGE SERVICES**

81. Section 1862 of the Social Security Act, codified at 42 U.S.C. § 1395y(a)(1)(A), provides that under Medicare, "no payment may be made under part A or part B for any expenses incurred for items or services… [that] are not reasonable and necessary for the diagnosis or treatment of illness . . . ."

82. When a provider submits a claim for payment to Medicare, they certify that the services both were provided as billed and are medically reasonable and necessary.

18

83.     Similarly, under 42 C.F.R. § 411.15(k)(1) of the Medicare program regulations, any services that are not "reasonable and necessary…[f]or the diagnosis or treatment of illness or injury" are excluded from coverage.

84.     To determine whether services are reasonable and necessary such that reimbursement is appropriate, Medicare requires complete documentation of the services rendered to beneficiaries. *See* 42 U.S.C. §§ 1395l(e), 1395u(c)(2)(B)(i).

85.     To be a "covered service" and eligible for payment by Medicare, Dennis' SLP claims also must comply with Novitas' Local Coverage Determination L35070, *Speech – Language Pathology (SLP) Services: Communication Disorders (L35070)* ("LCD").

86.     The SLP services covered by the LCD "are those evaluation and therapeutic services necessary for the diagnosis and treatment of speech and language disorders, which result in communication disabilities; and for the diagnosis and treatment of cognitive communication impairments." LCD at p.4.

87.     TRICARE similarly only covers "SLP services to improve, restore, or maintain function, or to minimize or prevent deterioration of function of a patient." SLP "maintenance therapy" services that do not require a skilled level are excluded from coverage. TRICARE Policy Manual Ch. 7, § 7.1.

88.     Novitas also requires that "[a]ll documentation must be maintained in the patient's medical record and made available to the contractor upon request … The medical

19

record documentation must support the medical necessity of the services as stated in this policy." LCD at p.8.

89.     At all times relevant to this Complaint, CPT 92507 was defined in the American Medical Association ("AMA") CPT Code Book as "Treatment of speech, language, voice, communication, and/or auditory processing disorder; individual." This service is covered by Medicare only when it corresponds to a direct one-on-one interaction between the beneficiary and a qualified provider. This CPT code is "untimed" and is billed as one unit once per day regardless of the length of service provided that day.

90.     At all times relevant to this Complaint, HCPCS G0153 was defined by Oklahoma Medicaid as "HHCP-SVS OF S/L PATH, EA 15MN."  HCPCS G0153 is used when the CPT 92507 individual therapy service is provided to a patient that is homebound or in a home health or hospice setting. HCPCS G0153 is a timed based code wherein one unit equals 15 minutes of direct patient care.

91.     For timed codes billed in 15-minute units, "providers bill a single 15-minute unit for treatment greater than or equal to 8 minutes through and including 22 minutes. If the duration of a single modality or procedure in a day is greater than or equal to 23 minutes, through and including 37 minutes, then 2 units should be billed," and so on. *Medicare Claims Processing Manual*, Pub. 100-04, Ch. 5, § 20.2. This is sometimes referred to as the "Rule of Eights."

92.     The Medicare Claims Processing Manual also specifies that for timed codes billed in 15-minute increments, "the time counted as 'intra-service' care begins when the

therapist or physician … is directly working with the patient to deliver treatment services."

"Pre- and post-delivery services are not to be counted in determining treatment service time." *Id.* at § 20.3.

93.    At all times relevant to this Complaint, CPT 96105 was defined in the AMA CPT Codebook as "Assessment of aphasia … with interpretation and report, per hour." The LCD defines assessment of aphasia as "[t]he assessment of expressive and receptive speech and language function, language comprehension, speech production ability, reading, spelling, and writing, with interpretation and report (per hour)." *Id.* at p.5.

94.    The LCD also states: "A comprehensive aphasia assessment is generally covered once." *Id.*

95.    CPT 96105 is a timed code wherein one unit corresponds to one hour of service. This code may only be billed when "a full, formal assessment is completed." *Medicare Claims Processing Manual*, Pub. 100-04, Ch. 5, § 20.4.

96.    Dennis had access to the LCD and applicable Medicare laws, regulations, and program instructions at all times relevant to this Complaint.

97.    The other GHBP either follow or use rules similar to the Medicare laws, regulations, and requirements to determine if services are covered and reimbursable.

98.    Dennis had access to the laws, regulations, requirements, and program instructions of the other GHBP at all times relevant to this Complaint.

## VI.    DENNIS' FRAUDULENT SCHEMES

### A. Prior Audits and Reviews of Dennis' SLP Billing

99.    In October 1996 and in response to concerns about Dennis' billing, OHCA temporarily required Dennis to submit with each claim for payment a handwritten or typed and notarized affidavit from the parent or guardian of Dennis' patients to demonstrate that services were provided on a date certain.

100.    DHA pursued administrative remedies against Dennis in or around 2014 after completing a medical review of claims submitted or caused to be submitted by Dennis for SLP services having dates of service from April 1, 2010, to October 30, 2014. DHA determined that 83 claim lines were inappropriate and not reimbursable due to excessive units, 46 claim lines were disallowed as misrepresented services, 37 claim lines were disallowed because records did not substantiate the billed service, and four claim lines were disallowed due to Dennis failing to provide records for the billed service.

101.    By letter dated June 14, 2023, Novitas notified Dennis of the initiation of a Targeted Probe and Educate ("TPE") post-payment medical review of claims for payment submitted by or at the direction of Dennis having service dates from May 2022 through April 2023. That letter also notified Dennis, among other things, that

   a. "Documentation supporting the medical necessity for continued treatment must be made available to Medicare upon request;"

   b. Therapeutic procedures require "that the practitioner have direct (one-on-one) patient contact;" and

   c. "For any timed services, the total number of treatment minutes must be documented in the medical record."

102.    By letter dated August 11, 2023, Novitas notified Dennis that of the 40 claims billed using CPT 92507 and reviewed in the TPE, all 40 claims were denied. The claims were denied, *inter alia*, because the documentation "did not include a treatment note which contained all the required elements including date of treatment, description of modality/procedure to support accurate billing, total treatment minutes/ total timed code treatment minutes and signature of qualified professional."

103.    In October 2023, BlueCross and BlueShield of Oklahoma ("BCBSOK") entered into a settlement agreement with Dennis wherein Dennis agreed to repay $248,000 to BCBSOK for SLP services spanning dates of service from June 17, 2020, to June 16, 2023 ("BCBSOK Settlement"). Dennis agreed to make monthly payments to BCBSOK, with the full amount owed to be paid off within two years.

104.    The BCBSOK Settlement was prompted by a review of Dennis' claim history by a BCBSOK certified professional coder, as shown in an April 2023 letter from BCBSOK to Dennis. According to that correspondence, from 2021 through April 2023, Dennis billed BCBSOK for 24 or more hours of services per day on 127 occasions, 16 or more hours of services per day on 97 occasions, and more than 8 hours of services on at least 71 occasions. BCBSOK determined that on November 1, 2022, for example, Dennis billed for treating 6 patients for a total of 56 hours. BCBSOK requested medical records from Dennis to substantiate her claims for 11 patients.

105.    BCBSOK's April 2023 letter to Dennis also specifically states that CPT 96105 is defined as: Assessment of aphasia … with interpretation and report, per hour. At

23

that time, Dennis routinely billed BCBSOK for 8 units of 96105 in one day for the same patient, which equaled 7.5-8 hours of face-to-face services. BCBSOK determined that Dennis was not providing those services at all in some instances, and never in 7.5-8 hour durations.

106.    BCBSOK's medical review of claims for payment submitted by or at the direction of Dennis using CPT 96105 and 92507 for services spanning dates of service from June 17, 2020, to June 16, 2023, "revealed services billed that were not performed, billed inappropriately and/or were not supported by properly documented records made available for [BCBSOK's] review."

107.    During a telephone call between BCBSOK representatives and Dennis on or about May 2, 2023, BCBSOK again informed Dennis that CPT 96105 (Assessment of Aphasia) is billed in one-hour units. In response, Dennis agreed to correct her billing of excessive units going forward and refund the overpayments resulting from inappropriate billing.

108.    BCBSOK again informed Dennis that CPT 96105 is a face-to-face service billed in one-hour units in an August 23, 2023, telephone call and, again, in a letter dated August 24, 2023. That letter also informed Dennis that BCBSOK "confirmed [her] repeated and inappropriate billing of services on dates" when the beneficiary was not present and "no treatment was provided." The letter states that Dennis admitted in the August 2023 telephone call that she "routinely billed services without the patient present, for dates when [she] reviewed patient records and previously performed testing but did not

24

provide any treatment."

109.    BCBSOK's August 23, 2023, letter specifically informed Dennis that:

No instances where CPT 96105 … was billed were supported by your documentation. Your claims history reflects the routine billing of eight (8) units of 96105, which represents eight (8) hours of your performance of an assessment of aphasia … Parents of your patients have reported patients not being present on dates when you billed 96105, and never receiving treatment lasting more than thirty (30) minutes.

No instances where CPT 92507 … was billed were supported by your documentation. Documentation provided for CPT 92507 failed to identify the reason for each treatment, diagnoses, specific changes in patients' conditions, treatment plan/goals, or a dated signature.

110.    In September 2024, Humana Military placed Dennis on prepayment review due to billing discrepancies. Humana Military required that "[a]ll future claims [submitted by Dennis] must be submitted with medical documentation for review to confirm compliance prior to payment."

111.    Dennis stopped submitting claims for payment for SLP services to WPS in or around September 2024.

### B.  Billing GHBP for Services That Were Not Rendered

112.    From at least June 2022 through April 2024, Dennis submitted or caused to be submitted claims for payment to GHBP for SLP services that were not provided.

113.    Specifically, Dennis submitted or caused to be submitted claims for payment to GHBP for SLP services requiring a direct one-on-one interaction between Dennis and the GHBP beneficiary when no such interaction occurred.

114.    From at least March 13, 2023, to March 16, 2023, Dennis traveled to and was

physically present in Colorado. During that time, Dennis submitted multiple claims for payment to GHBP for SLP services that require a direct one-on-one interaction with the beneficiary, who was in Oklahoma.

115. On information and belief, Dennis submitted claims for payment to GHBP for services requiring a direct one-on-one interaction with a beneficiary in Oklahoma on other dates when Dennis was not physically in Oklahoma.

116. Dennis knowingly submitted claims for payment for these services even though no direct one-on-one interaction with the beneficiary occurred.

117. The following examples are representative of Dennis' fraudulent scheme:

***Beneficiary D.C.***

a. D.C. was an Oklahoma Community Waiver beneficiary who allegedly received SLP services from Dennis between June 2022 and April 2024.

b. Dennis was in Colorado on March 16, 2023, and did not have direct one-on-one interaction with D.C. that day.

c. Dennis' electronic appointment calendar contains an appointment on March 16, 2023, titled "Colorado Return," which runs from 7:00 a.m. to 6:00 p.m.

d. Dennis' electronic appointment calendar contains an appointment for D.C. dated March 11, 2023, that includes the notation "REMIND CANCELLED NEXT WEEK."

e. A March 11, 2023, appointment entry for a different patient states: "TEXTED A REMINDER THAT I[sic] OUT NEXT WEEK."

f. Dennis' electronic appointment calendar does not contain an appointment for D.C. dated March 16, 2023.

g. On or about March 21, 2023, Dennis submitted or caused to be submitted to OHCA claim number 2223080603493, which included a claim line requesting payment for three units of CPT G0153 services allegedly provided to D.C. Dennis was the billing and rendering provider on the claim. The date of service on this claim line was March 16, 2023.

h. On or about March 29, 2023, OHCA paid Dennis for this claim line in claim number 2223080603493 in the amount of $73.29. If OHCA had known the three units of CPT G0153 services were not rendered, it would not have reimbursed Dennis for these billed services.

i. As a result of Dennis' fraudulent conduct, and the submission of this false or fraudulent claim, Dennis received $73.29 from OHCA to which she was not entitled.

***Beneficiary B.M.***

a. B.M. was a Medicare beneficiary who allegedly received SLP services from Dennis between June 2022 and April 2024.

b. Dennis was in Colorado on March 15, 2023, and did not have direct one-on-one interaction with B.M. that day.

c. Dennis' electronic appointment calendar contains an appointment on March 15, 2023, titled "Colorado."

d. Dennis' electronic appointment calendar does not contain an appointment for

B.M. dated March 15, 2023.

e.  On or about April 4, 2023, Dennis submitted or caused to be submitted to Novitas claim number 911123094030390, which included a claim line requesting payment for one unit of CPT 92507 services allegedly provided to B.M. on March 15, 2023. Dennis was the billing and rendering provider on the claim.

f.  On or about April 18, 2023, Novitas paid Dennis for this claim line in claim number 911123094030390 in the amount of $57.52. If Novitas had known that the CPT 92507 services were not rendered, it would not have reimbursed Dennis for these billed services.

g.  As a result of Dennis' fraudulent conduct, and the submission of this false or fraudulent claim, Dennis received $57.52 from Novitas to which she was not entitled.

***Beneficiary M.O.***

a.  M.O. was a TRICARE beneficiary who allegedly received SLP services from Dennis between June 2022 and April 2024.

b.  Dennis was in Colorado on March 14, 2023, and did not have direct one-on-one interaction with M.O. that day.

c.  Dennis' electronic appointment calendar contains an appointment on March 14, 2023, titled "Colorado."

d.  Dennis' electronic appointment calendar contains an appointment for M.O. dated March 14, 2023, that includes the notation "TOLD ON FEBRUARY 28TH."

28

e. Dennis' electronic appointment calendar does not contain an appointment for M.O. dated March 15, 2023.

f. Dennis submitted or caused to be submitted to WPS claim number 2023076OK994681018075, which requested payment for eight units of CPT 96105 services allegedly provided to M.O. Dennis was the billing and rendering provider on the claim. The date of service on the claim was March 14, 2023.

g. On or about March 20, 2023, WPS accepted claim number 2023076OK994681018075. WPS paid Dennis $637.42 for claim number 2023076OK994681018075. If WPS had known the eight units of CPT 96105 services were not rendered, it would not have reimbursed Dennis for these billed services.

h. Dennis submitted or caused to be submitted to WPS claim number 2023076OK994651018405, which requested payment for eight units of CPT 96105 services allegedly provided to M.O. Dennis was the billing and rendering provider on the claim. The date of service on the claim was March 15, 2023.

i. On or about March 20, 2023, WPS accepted claim number 2023076OK994651018405. WPS paid Dennis $637.42 for claim number 2023076OK994651018405. If WPS had known the eight units of CPT 96105 services were not rendered, it would not have reimbursed Dennis for these billed services.

j. As a result of Dennis' fraudulent conduct, and the submission of these

29

representative false or fraudulent claims, Dennis received $1,274.84 from WPS to which she was not entitled.

118.  Dennis also submitted multiple claims for payment to GHBP for SLP services that require a direct one-on-one interaction when the GHBP beneficiary identified in the claim for payment was not in the United States.

119.  Dennis knowingly submitted claims for payment for these services even though no direct one-on-one interaction with the beneficiary occurred.

120.  The following examples are representative of Dennis' fraudulent scheme:

***Beneficiary E.S.***

a.  E.S. was a TRICARE beneficiary who allegedly received SLP services from Dennis between June 2022 and April 2024.

b.  On or about June 21, 2022, E.S. traveled by plane from the United States to Helsinki, Finland. E.S. returned to the United States by plane on or about July 14, 2022.

c.  Dennis submitted or caused to be submitted to WPS claim number 2022176OK998421028075, which requested payment for eight units of CPT 96105 services allegedly provided to E.S. Dennis was the billing and rendering provider on the claim. The date of service on the claim was June 24, 2022.

d.  On or about June 27, 2022, WPS accepted claim number 2022176OK998421028075. WPS paid Dennis $683.78 for claim number 2022176OK998421028075. If WPS had known the eight units of CPT 96105

services were not rendered, it would not have reimbursed Dennis for these billed services.

e. Dennis submitted or caused to be submitted to WPS claim number 2022186OK995041217235, which requested payment for eight units of CPT 96105 services allegedly provided to E.S. Dennis was the billing and rendering provider on the claim. The date of service on the claim was July 4, 2022.

f. On or about July 6, 2022, WPS accepted claim number 2022186OK995041217235. WPS paid Dennis $683.78 for claim number 2022186OK995041217235. If WPS had known the eight units of CPT 96105 services were not rendered, it would not have reimbursed Dennis for these billed services.

g. As a result of Dennis' fraudulent conduct, and the submission of these representative false or fraudulent claims, Dennis received $1,367.56 from WPS to which she was not entitled.

121.    Dennis also submitted multiple claims for payment to GHBP for SLP services that require a direct one-on-one interaction on dates of service when the GHBP beneficiary identified in the claim for payment had no interaction with Dennis.

122.    Dennis knowingly submitted claims for payment for these services even though no direct one-on-one interaction with the beneficiary occurred.

123.    The following examples are representative of Dennis' fraudulent scheme:

31

***Beneficiary D.D.***

a. D.D. was an Oklahoma Community Waiver beneficiary who allegedly received SLP services from Dennis between June 2022 and April 2024.

b. During the time relevant to this Complaint, D.D. resided in a group home in Oklahoma City, OK. The staff responsible for the group home completed a DDS-5 Referral Form for Examination and Treatment ("DDS-5 Form") for every appointment D.D. attended. The DDS-5 Form is to be signed and dated by the provider who rendered services to the Community Waiver beneficiary and includes the date of the beneficiary's next appointment with that provider.

c. D.D.'s appointments with Dennis primarily occurred on Thursdays at 5:00 p.m. and lasted 30 minutes.

d. Dennis' electronic appointment calendar contains an appointment for D.D. on Thursday, October 12, 2023, from 5:00 p.m. to 5:30 p.m. The appointment includes the notation "REMIND INSERVICE NEXT THURSDAY AND TOMMY OUT."

e. DDS-5 Forms confirm that D.D. met face-to-face with Dennis on Thursday, October 12, 2023, and on Thursday, October 26, 2023. The October 12, 2023, DDS-5 Form states that D.D.'s next appointment with Dennis was scheduled for October 26, 2023. Neither Dennis nor the group home where D.D. resided have records showing that D.D. attended SLP therapy services with Dennis from October 13, 2023, through October 25, 2023.

f.  On or about October 31, 2023, Dennis submitted or caused to be submitted to OHCA claim number 2223304602163, which included claim lines requesting payment for:

    i.  Four units of CPT G0153 services allegedly provided to D.D. on October 13, 2023;

    ii.  Three units of CPT G0153 services allegedly provided to D.D. on October 14, 2023;

    iii.  Four units of CPT G0153 services allegedly provided to D.D. on October 17, 2023;

    iv.  Four units of CPT G0153 services allegedly provided to D.D. on October 18, 2023; and

    v.  Twelve units of CPT G0153 services allegedly provided to D.D. on October 19, 2023.

g.  Dennis was the billing and rendering provider on claim number 2223304602163.

h.  On or about November 8, 2023, OHCA paid Dennis for these claim lines in claim number 2223304602163 in the amount of $659.61. If OHCA had known these 27 units of CPT G0153 services were not rendered, it would not have reimbursed Dennis for these billed services.

i.  On or about February 26, 2024, Dennis submitted or caused to be submitted to OHCA claim number 2224057602700, which requested payment for 12 units of

CPT G0153 services allegedly provided to D.D. Dennis was the billing and rendering provider on the claim. The date of service on the claim was October 25, 2023.

j. On or about March 6, 2024, OHCA paid Dennis for claim number 2224057602700 in the amount of $293.16. If OHCA had known the 12 units of CPT G0153 services were not rendered, it would not have reimbursed Dennis for these billed services.

k. As a result of Dennis' fraudulent conduct, and the submission of these representative false or fraudulent claims, Dennis received $952.77 from OHCA to which she was not entitled.

### d. Billing GHBP for Medically Unnecessary Services

124. From at least January 2020 through April 2024, Dennis submitted or caused to be submitted claims for payment to GHBP for SLP services that were not medically necessary or reasonable or were otherwise not reimbursable.

125. Specifically, Dennis routinely and knowingly billed TRICARE for eight units of CPT 96105 in one day for the same beneficiary. These services, if rendered at all, were excessive, not medically reasonable and necessary, and not reimbursable.

126. The following examples are representative of Dennis' fraudulent schemes:

*Beneficiary M.O.*

a. M.O. was a TRICARE beneficiary who allegedly received SLP services from Dennis between January 2020 and April 2024.

34

b. From at least October 29, 2020, through April 23, 2024, Dennis routinely submitted claims for payment to WPS seeking reimbursement for eight units of CPT 96105 allegedly provided to M.O. in one day.

c. For dates of service October 29, 2020, through April 23, 2024, Dennis received payment from WPS for more than 7,000 units of CPT 96105, which equate to more than 7,000 hours of services, allegedly provided to M.O.

d. These CPT 96105 services were not rendered, excessive, not medically reasonable or necessary, and/or not reimbursable by TRICARE.

e. Dennis submitted or caused to be submitted to WPS claim number 2021298OK989291115495, which requested payment for eight units of CPT 96105 services allegedly provided to M.O. Dennis was the billing and rendering provider on the claim. The date of service on the claim was October 29, 2020.

f. On or about October 26, 2021, WPS accepted claim number 2021298OK989291115495. WPS paid Dennis $725.98 for claim number 2021298OK989291115495. If WPS had known the eight units of CPT 96105 services were excessive, not medically reasonable or necessary, and not reimbursable, it would not have paid Dennis for these billed services.

g. Dennis submitted or caused to be submitted to WPS claim number 2021039OK992641154535, which requested payment for eight units of CPT 96105 services allegedly provided to M.O. Dennis was the billing and rendering provider on the claim. The date of service on the claim was February 8, 2021.

35

h. On or about February 9, 2021, WPS accepted claim number 2021039OK992641154535. WPS paid Dennis $694.98 for claim number 2021039OK992641154535. If WPS had known the eight units of CPT 96105 services were excessive, not medically reasonable or necessary, and not reimbursable, it would not have paid Dennis for these billed services.

i. Dennis submitted or caused to be submitted to WPS claim number 2021043OK994711008355, which requested payment for eight units of CPT 96105 services allegedly provided to M.O on February 11, 2021, and for eight units of CPT 96105 services allegedly provided to M.O. on February 12, 2021. Dennis was the billing and rendering provider on the claim.

j. On or about February 16, 2021, WPS accepted claim number 2021043OK994711008355. WPS paid Dennis $907.97 for claim number 2021043OK994711008355. If WPS had known that the 16 units of CPT 96105 services were excessive, not medically reasonable or necessary, and not reimbursable, it would not have paid Dennis for these billed services.

k. Dennis submitted or caused to be submitted to WPS claim number 2024100OK994431011485, which requested payment for eight units of CPT 96105 services allegedly provided to M.O on April 9, 2024. Dennis was the billing and rendering provider on the claim.

l. On or about April 10, 2024, WPS accepted claim number 2024100OK994431011485. WPS paid Dennis $636.42 for claim number

2024100OK994431011485. If WPS had known the eight units of CPT 96105 services were excessive, not medically reasonable or necessary, and not reimbursable, it would not have paid Dennis for these billed services.

m. As a result of Dennis' fraudulent conduct, and the submission of these representative false or fraudulent claims, Dennis received $2,965.35 from WPS to which she was not entitled.

127. As a result of Dennis' fraudulent conduct, and the submission of false or fraudulent claims to the United States and the State of Oklahoma, Dennis received more than $2.5 million from GHBP to which she was not entitled.

128. Because Dennis knowingly submitted or caused to be submitted claims that included services not rendered, medically unnecessary services, and services that did not comply with program requirements, the claims were false or fraudulent and not payable. Accordingly, the United States and the State of Oklahoma seek to recover damages, along with appropriate trebling of those damages, and penalties for each false claim submitted or caused to be submitted by Dennis.

## FIRST CLAIM FOR RELIEF

### Violations of the FCA: Presenting False Claims for Payment
### (31 U.S.C. § 3729(a)(1)(A))

129. The United States realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

130. The United States seeks relief against Dennis under Section 3729(a)(1)(A) of the FCA.

131.   Dennis knowingly presented, or caused to be presented, materially false and fraudulent claims for payment or approval to the United States, including claims for reimbursement by GHBP for services that were not rendered, were not medically necessary, and/or did not comply with program requirements. These claims were both factually and legally false or fraudulent.

132.   GHBP would not have paid these false and fraudulent claims had they known that the services were not rendered, were not medically necessary, and/or did not comply with program requirements.

133.   Dennis presented or caused to be presented these claims with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

134.   The United States, unaware of the falsity of the claims submitted for payment or caused to be submitted for payment by Dennis, approved, paid, and participated in payments made by GHBP for false or fraudulent claims that would otherwise not have been approved and paid.

135.   By reason of the false or fraudulent claims, the United States has sustained damages in a substantial amount to be determined at trial and is entitled to treble damages plus a civil penalty for each false or fraudulent claim.

## SECOND CLAIM FOR RELIEF

**Violations of the FCA: Use of False Statements**
**(31 U.S.C. § 3729(a)(1)(B))**

136.   The United States realleges and incorporates by reference each of the

preceding paragraphs as if fully set forth herein.

137. The United States seeks relief against Dennis under Section 3729(a)(1)(B) of the FCA.

138. As detailed above, Dennis knowingly made, used, or caused to be made or used, false records or statements, which included the false statements, express and implied certifications and representations on claim forms, the EDI, and multiple Medicare 855I forms, to obtain approval for and payment by the United States for false or fraudulent claims as detailed above.

139. The false statements, express and implied certifications, and representations made, used, or caused to be made or used by Dennis were material to the payment of the false claims by the United States.

140. The false statements, express and implied certifications, and representations were made, used, or caused to be made or used with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

141. The United States, unaware of the falsity of the records and statements made, used, or caused to be made or used by Dennis, approved, paid, and participated in payments made by GHBP for false or fraudulent claims that would otherwise not have been approved and paid.

142. By reason of these false records or statements, the United States has sustained damages in a substantial amount to be determined at trial and is entitled to treble damages plus a civil penalty for each false or fraudulent claim.

## THIRD CLAIM FOR RELIEF

### Violations of the Oklahoma Medicaid False Claims Act:
### Presenting False Claims for Payment
### (63 Okla. Stat. § 5053.1(B)(1))

143.    The State of Oklahoma realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

144.    The State of Oklahoma seeks relief against Dennis under Section 5053.1(B)(1) of the OFCA.

145.    Dennis knowingly presented, or caused to be presented, materially false and fraudulent claims for payment or approval to the State of Oklahoma, including claims for reimbursement by OHCA, by misrepresenting the services allegedly performed and billing for services not rendered. These claims were both factually and legally false or fraudulent.

146.    OHCA would not have paid these false and fraudulent claims had they known that the services had been misrepresented and were not rendered.

147.    Dennis presented or caused to be presented these claims with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

148.    The State of Oklahoma, unaware of the falsity of the claims submitted for payment or caused to be submitted for payment by Dennis, approved, paid, and participated in payments made by OHCA for false or fraudulent claims that would otherwise not have been approved and paid.

149.    By reason of the false or fraudulent claims, the State of Oklahoma has

40

sustained damages in a substantial amount to be determined at trial and is entitled to treble damages plus a civil penalty for each false or fraudulent claim.

## FOURTH CLAIM FOR RELIEF

**Violations of the Oklahoma Medicaid False Claims Act:
Use of False Statements
(63 Okla. Stat. § 5053.1(B)(2))**

150.    The State of Oklahoma realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

151.    The State of Oklahoma seeks relief against Dennis under Section 5053.1(B)(2) of the OFCA.

152.    As detailed above, Dennis knowingly made, used, or caused to be made or used, false records or statements, which included the false statements, express and implied certifications, and representations on claim forms to obtain approval for and payment by the State of Oklahoma for false or fraudulent claims as detailed above.

153.    The false statements, express and implied certifications, and representations made, used, or caused to be made or used by Dennis were material to the payment of the false or fraudulent claims by the State of Oklahoma.

154.    The false statements, express and implied certifications, and representations were made, used, or caused to be made or used with actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

155.    The State of Oklahoma, unaware of the falsity of the records and statements made, used, or caused to be made or used by Dennis, approved, paid, and participated in

payments made by OHCA for false or fraudulent claims that would otherwise not have been approved and paid.

156.    By reason of these false records or statements, the State of Oklahoma has sustained damages in a substantial amount to be determined at trial and is entitled to treble damages plus a civil penalty for each false or fraudulent claim.

## FIFTH CLAIM FOR RELIEF

### Payment by Mistake
### (Federal Common Law)

157.    The United States realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

158.    The United States paid Dennis for claims submitted by or at the direction of Dennis for services that were not rendered, were not medically necessary, and/or did not comply with program requirements, without knowledge of material facts, and under the mistaken belief that Dennis was entitled to receive payment for such claims.

159.    The mistaken belief of the United States was material to its decision to pay Dennis on such claims.

160.    Dennis intended that the United States would rely on her false statements, representations, and material omissions of fact.

161.    The United States reasonably relied on Dennis' false statements, representations, and material omissions of fact and, as a result, paid Dennis money that it otherwise would not have been paid.

162.    The United States has been damaged as a result of these mistaken payments

and is entitled to recover the amount of the payments in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### Unjust Enrichment
### (Federal Common Law)

163.   The United States realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

164.   The United States paid claims submitted to GHBP by or at the direction of Dennis based on false claims and statements submitted to GHBP.

165.   By retaining monies and profits received from services that were not reimbursable, Dennis retained money that was the property of GHBP to which she was not entitled.

166.   The United States seeks the recovery of all funds paid by GHBP by which Dennis has been unjustly enriched, including profits unlawfully received by Dennis and other amounts paid based on claims for services that were not rendered, were not medically necessary, and/or did not comply with program requirements.

167.   As a consequence of the acts set forth above, Dennis was unjustly enriched at the expense of the United States in an amount to be determined and which, under the circumstances, in equity and good conscience, should be returned to the United States.

## SEVENTH CLAIM FOR RELIEF

### Fraud
### (Federal Common Law)

168.   The United States realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

169.   Dennis made materially false statements and representations, including material omissions of fact, to the United States to obtain money from GHBP to which she was not entitled.

170.   Dennis made such statements and representations with knowledge of their materiality and falsity.

171.   Dennis also failed to tell GHBP about the fraudulent activity, which was a material omission.

172.   Dennis made such materially false statements, representations, and omissions with the intent that the United States would rely on them in making determinations to pay claims submitted to GHBP.

173.   The United States reasonably relied on Dennis' material misrepresentations and omissions.

174.   The United States was injured as a result of Dennis' unlawful conduct in an amount to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

### Payment by Mistake
### (Oklahoma Common Law)

175.   The State of Oklahoma realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

176.   The State of Oklahoma paid Dennis for claims for services that were not rendered, were not medically necessary, and/or did not comply with program requirements, without knowledge of material facts, and under the mistaken belief that Dennis was entitled to receive payment for such claims.

177.   The mistaken belief of the State of Oklahoma was material to its decision to pay Dennis on such claims.

178.   Dennis intended that the State of Oklahoma would rely on her false statements, representations, and material omissions of fact.

179.   The State of Oklahoma reasonably relied on Dennis' false statements, representations, and material omissions of fact and, as a result, paid Dennis money that otherwise would not have been paid.

180.   The State of Oklahoma has been damaged as a result of these mistaken payments and is entitled to recover the amount of the payments in an amount to be determined at trial.

## NINTH CLAIM FOR RELIEF

### Unjust Enrichment
### (Oklahoma Common Law)

181.    The State of Oklahoma realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

182.    The State of Oklahoma paid claims submitted to Medicaid by or at the direction of Dennis based on false claims and statements submitted to the State of Oklahoma.

183.    By retaining monies and profits received from services that were not reimbursable, Dennis retained money that was the property of the State of Oklahoma to which she was not entitled.

184.    The State of Oklahoma seeks the recovery of all funds paid by the State of Oklahoma by which Dennis has been unjustly enriched at the expense of the State of Oklahoma, including profits unlawfully received by Dennis and other amounts paid based on claims for services that were misrepresented and not rendered.

185.    As a consequence of the acts set forth above, Dennis was unjustly enriched at the expense of the State of Oklahoma in an amount to be determined and which, under the circumstances, in equity and good conscience, should be returned to the State of Oklahoma.

## TENTH CLAIM FOR RELIEF

### Fraud
### (Oklahoma Common Law)

186.    The State of Oklahoma realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

187.    Dennis made materially false statements and representations, including material omissions of fact, to the State of Oklahoma to obtain money from the State of Oklahoma to which she was not entitled.

188.    Dennis made such statements and representations with knowledge of their materiality and falsity.

189.    Dennis also failed to tell the State of Oklahoma about the fraudulent activity, which was a material omission.

190.    Dennis made such materially false statements, representations, and omissions with the intent that the State of Oklahoma would rely on them in making determinations to pay claims submitted to the State of Oklahoma.

191.    The State of Oklahoma reasonably relied on Dennis' material misrepresentations and omissions.

192.    The State of Oklahoma was injured as a result of Dennis' unlawful conduct in an amount to be determined at trial.

### PRAYER FOR RELIEF

Wherefore, the United States respectfully requests judgment be entered in its favor and as follows:

47

a. Against Dennis on Claims for Relief One and Two (FCA), treble damages and civil penalties in the maximum amount allowed by law;

b. Against Dennis on Claims for Relief Five (Payment by Mistake), Six (Unjust Enrichment), and Seven (Fraud), damages to the extent allowed by law;

c. All costs associated with prosecuting this civil action, as provided by law;

d. Interest on all amounts owed to the United States, as provided by law; and

e. For all other relief the Court deems just and proper;

and, wherefore, the State of Oklahoma respectfully requests judgment be entered in its favor and as follows:

a. Against Dennis on Claims for Relief Three and Four (OFCA), treble damages and civil penalties in the maximum amount allowed by law;

b. Against Dennis on Claims for Relief Eight (Payment by Mistake), Nine (Unjust Enrichment), and Ten (Fraud), damages to the extent allowed by law;

c. All costs associated with prosecuting this civil action, as provided by law;

d. Interest on all amounts owed to the State of Oklahoma, as provided by law; and

e. For all other relief the Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the United States and the State of Oklahoma demand a trial by jury on all issues so triable.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

*s/ Amanda R. Johnson*
AMANDA R. JOHNSON, OK Bar No. 32575
RONALD R. GALLEGOS, Bar No. 013227AZ
Assistant U.S. Attorneys
United States Attorney's Office
Western District of Oklahoma
210 Park Avenue, Suite 400
Oklahoma City, OK 73102
(405) 553-8700
Amanda.Johnson3@usdoj.gov
Ron.Gallegos@usdoj.gov
*Attorneys for the United States of America*



GENTNER DRUMMOND
Oklahoma Attorney General

*s/ JAMIE L. BLOYD (with permission)*
Jamie L. Bloyd, OK Bar No. 30989
Annette Howlett, OK Bar No. 21223
Assistant Attorneys General
Oklahoma Attorney General's Office
313 N.E. 21st Street
Oklahoma City, OK 73105
405-522-2962 (phone)
Jamie.Bloyd@oag.ok.gov
Annette.Howlett@oag.ok.gov
*Attorneys for the State of Oklahoma*

49